Opinion
 

 VOGEL (C. S.), P. J.
 

 These consolidated appeals involve the purported conveyance of a condominium complex, including the common areas, to a third party developer without obtaining a judicial partition pursuant to Civil Code section 1359. The matter comes to us to review the granting of a preliminary injunction to restrain the holder of the deeds of trust which encumber the individual units from foreclosing, and the denial of a preliminary injunction to restrain the third party developer from performing purported prophylactic demolition on the complex. We conclude that compliance with section 1359 is essential to establish the legitimacy of the conveyance of the complex and that neither judicial nor nonjudicial partition can undermine the security interest of the tmst deed holder.
 

 Factual and Procedural Background
 

 On January 17, 1994, the Northridge earthquake seriously damaged the 36-unit condominium complex at 14859 Moorpark Street in Sherman Oaks (hereafter the complex). The complex’s declaration of establishment of covenants, conditions and restrictions (hereafter CC&R’s) provide that if the insurance proceeds available to repair the complex’s common areas fall below 85 percent of the cost of repairs and three-quarters of the owners do
 
 *1401
 
 not vote to contribute to the repairs, the complex is to be sold and the sales proceeds are to be distributed to the owners. The CC&R’s further state that the common areas are subject to partition solely as provided in Civil Code section 1359, and that the homeowners association of the complex (hereafter the association) has an irrevocable power of attorney to sell the complex “when partition of the [complex] may be had” under section 1359, but only after recordation of a certificate “setting forth compliance with the foregoing condition . . . .”
 

 At a meeting on July 13, 1994, three-quarters of the owners failed to approve repair of the common areas, and on February 6, 1995, the association recorded a certificate of intention not to repair. Following a meeting on May 15, 1996, at which 50 percent of the owners voted not to rebuild the complex, the association recorded a second certificate on June 11, 1996, stating that pursuant to its power of attorney, it intended to sell the complex.
 

 On June 19, 1996, the association agreed to sell the complex to MWH Development Corporation (hereafter MWH). On June 26, 1996, the association and its president, Russell Saffer, initiated an action to partition the complex (No. LC037523). The complaint contained claims for judicial partition, declaratory relief, and injunctive relief against the owners and several mortgage holders, including VRT Corporation (hereafter VRT).
 

 On January 9, 1997, and before there was any resolution of its action for partition, the association recorded a grant deed conveying the complex to HP Moorpark, LLC (hereafter HP Moorpark).
 

 On January 27, 1997, VRT filed a cross-complaint in the partition action against the association and Saffer for declaratory and injunctive relief, and asserting tort claims. The cross-complaint alleged, inter alia, that the association and Saffer had allowed the complex to deteriorate, and that they had failed to disburse insurance proceeds and funds arising from a construction defect claim.
 

 On January 31, 1997, HP Moorpark, characterizing itself as MWH’s successor in interest with respect to the complex, initiated an action against VRT, the association, and all other persons claiming any right, title, or interest in the complex (No. LC040018). The complaint sought quiet title, as well as injunctive and declaratory relief. On February 14, 1997, Willis Investment Group (hereafter Willis), alleging that it owns two units in the complex, cross-complained for quiet title against HP Moorpark, the association, and Saffer. Willis is an affiliate of VRT.
 

 
 *1402
 
 In the partition action, the association and Saffer requested a preliminary injunction barring VRT from foreclosing on its 28 first deeds of trust on units in the complex. The trial court granted the request for a preliminary injunction on or about February 20, 1997.
 

 In the quiet title action, Willis sought a preliminary injunction precluding HP Moorpark and the association from asserting the validity or effectiveness of the grant deed by which HP Moorpark allegedly took title to the complex. The trial court denied Willis’s request for a preliminary injunction on March 6, 1997.
 

 VRT appealed from the ruling in the partition action, and Willis appealed from the ruling in the quiet title action. Their appeals were subsequently consolidated.
 

 Discussion
 

 A.
 
 Standard of Review
 

 In determining whether to issue a preliminary injunction, the trial court considers two related factors: (1) the likelihood that the plaintiff will prevail on the merits of its case at trial, and (2) the interim harm that the plaintiff is likely to sustain if the injunction is denied as compared to the harm that the defendant is likely to suffer if the court grants a preliminary injunction.
 
 (King
 
 v.
 
 Meese
 
 (1987) 43 Cal.3d 1217, 1226 [240 Cal.Rptr. 829, 743 P.2d 889].) “The latter factor involves consideration of such things as the inadequacy of other remedies, the degree of irreparable harm, and the necessity of preserving the status quo.”
 
 (Abrams
 
 v.
 
 St. John’s Hospital & Health Center
 
 (1994) 25 Cal.App.4th 628, 636 [30 Cal.Rptr.2d 603].)
 

 The determination whether to grant a preliminary injunction generally rests in the sound discretion of the trial court.
 
 (Abrams
 
 v.
 
 St. John’s Hospital & Health Center, supra,
 
 25 Cal.App.4th at p. 636.) “Discretion is abused when a court exceeds the bounds of reason or contravenes uncontradicted evidence. [Citation.]”
 
 (Jessen
 
 v.
 
 Keystone Savings & Loan Assn.
 
 (1983) 142 Cal.App.3d 454, 458 [191 Cal.Rptr. 104].)
 

 When, as here, the trial court is presented with evidence on the two factors in both cases but fails to make express findings, we presume that the trial court made appropriate factual findings (see
 
 MCA Records, Inc.
 
 v.
 
 Newton-John
 
 (1979) 90 Cal.App.3d 18, 23 [153 Cal.Rptr. 153]) and review the record for substantial evidence to support the rulings
 
 (American Academy
 
 
 *1403
 

 of Pediatrics
 
 v.
 
 Van de Kamp
 
 (1989) 214 Cal.App.3d 831, 838-839 [263 Cal.Rptr. 46]). However, to the extent that the determination on the likelihood of a party’s success rests on an issue of pure law not presenting factual issues to be resolved at trial, we review the determination de novo. (See
 
 Efstratis
 
 v.
 
 First Northern Bank
 
 (1997) 59 Cal.App.4th 667, 671-672 [69 Cal.Rptr.2d 445].)
 

 We reverse an order denying a preliminary injunction only if the trial court has abused its discretion in ruling on both factors.
 
 (Abrams
 
 v.
 
 St. John’s Hospital & Health Center, supra,
 
 25 Cal.App.4th at p. 636.) We reverse an order granting a preliminary injunction if the trial court has abused its discretion in ruling on one of the pertinent factors.
 
 (Carsten
 
 v.
 
 City of Del Mar
 
 (1992) 8 Cal.App.4th 1642, 1649 [11 Cal.Rptr.2d 252].)
 

 B.
 
 Denial of Preliminary Injunction in Quiet Title Action
 

 Willis contends that the trial court erred in denying an injunction prohibiting HP Moorpark and the association from asserting the validity of the grant deed by which the association conveyed the complex to HP Moorpark.
 
 [1]
 
 We agree.
 

 1.
 
 Probability of Success on the Merits
 

 Willis argues that the trial court erred in determining that Willis had no reasonable likelihood of prevailing on the merits of the quiet title action against HP Moorpark.
 

 The material facts are not in dispute. The original sales agreement between the association and MWH provides that “[t]he sale is contingent upon the court in [a partition] action issuing an order vesting the seller with the power to make such sale,” and an amendment to this agreement states that
 
 *1404
 
 the association and MWH permitted HP Moorpark to buy the complex.
 
 [2]
 
 HP Moorpark’s claim to an interest in the complex thus rests solely on its grant deed.
 

 The key issue concerning the validity of HP Moorpark’s claim is a question of law, namely, whether under Civil Code sections 1358 and 1359, the association could lawfully convey good title to the complex by grant deed to HP Moorpark without first securing a judicial partition of the complex. This issue is one of first impression.
 

 “The objective of statutory interpretation is to ascertain and effectuate legislative intent. To accomplish that objective, courts must look first to the words of the statute, giving effect to their plain meaning.”
 
 (In re Jerry R.
 
 (1994) 29 Cal.App.4th 1432, 1437 [35 Cal.Rptr.2d 155].) However, “the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.]”
 
 (Lungren
 
 v.
 
 Deukmejian
 
 (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)
 

 Civil Code section 1358, subdivision (b) provides: “In a condominium project the common areas are not subject to partition,
 
 except as provided in Section 1359.”
 
 (Italics added.) Section 1359, subdivision (a), provides in pertinent part: “Except as provided in this section, the common areas in a condominium project shall remain
 
 undivided,
 
 and there shall be
 
 no
 
 judicial partition thereof.” (Italics added.) Section 1359, subdivision (b), describes the conditions under which the trial court may order partition of a condominium complex.
 
 [3]
 

 Under California law, the term “partition” signifies “the procedure for segregating and terminating common interests in the same parcel of
 
 *1405
 
 property.” (5 Miller & Starr, Cal. Real Estate (2d ed. 1989) Holding Title, § 12:13, p. 121; see
 
 Noble
 
 v.
 
 Beach
 
 (1942) 21 Cal.2d 91, 95 [130 P.2d 426] [“The broad doctrine that partition does not create or convey a new or additional title or interest but merely severs the unity of possession is widely accepted and variously applied. [Citations.]”];
 
 Rancho Santa Margarita
 
 v.
 
 Vail
 
 (1938) 11 Cal.2d 501, 539 [81 P.2d 533] [“In a partition, there is no change of title between the tenants in common—it is simply a dividing up of what the parties already own. After the partition each tenant in common has exactly the same proportional interest in the property that he had prior thereto. The only difference is that now his interest is in severalty, while prior to the partition it was in common.”].) The term “partition” encompasses division of interests by judicial action and by voluntary agreement of the parties.
 
 (Gonzalez
 
 v.
 
 Gonzalez
 
 (1917) 174 Cal. 588 [163 P. 993];
 
 Tuffree
 
 v.
 
 Polhemus
 
 (1895) 108 Cal. 670, 677 [41 P. 806]; 5 Miller & Starr, Cal. Real Estate,
 
 supra,
 
 Holding Title, § 12:13, at p. 121.) In view of this established usage, the Legislature’s manifest intent in using the term “partition” in Civil Code section 1358 and the qualified term “judicial partition” in section 1359 is to bar partition of the complex’s common areas by voluntary action, and to permit judicial partition only under the conditions described in section 1359. (See
 
 Johnson
 
 v.
 
 Superior Court
 
 (1984) 159 Cal.App.3d 573, 584 [205 Cal.Rptr. 605] [Legislature’s selective use of qualified terms may establish its intent].)
 

 The association’s agreement to sell the complex to HP Moorpark constitutes an attempt to partition the complex by voluntary means. No California court has squarely addressed whether an agreement by cotenants to sell property held in common to a single buyer and share the proceeds amounts to a voluntary partition.
 
 [4]
 
 Nonetheless, existing authority supports the determination that such agreements constitute voluntary partitions. Within the context of a judicial partition action, the trial court must order partition by sale of the property and distribution of the sale proceeds if the parties agree to this procedure. (Code Civ. Proc., § 872.820, subd. (a); cf. 5 Miller & Starr, Cal. Real Estate,
 
 supra,
 
 Holding Title, § 12:14, at pp. 123-124.) Furthermore, in discussing voluntary partitions, the Supreme Court stated in
 
 Gonzalez
 
 v.
 
 Gonzalez, supra,
 
 174 Cal. at page 594: “ ‘As partition by act of the parties rests on their agreement, it is obvious that they may resort to
 
 any
 
 method which to them seems best, and that it must be impossible to specify
 
 *1406
 
 all the methods that may be resorted to, for human ingenuity may devise ways not hitherto employed and which nevertheless satisfy all the interested parties.’ [Citation.]” (Quoting 30 Cyc. 154, italics added.) Finally, this determination follows out-of-state case law. (68 C.J.S. (1950) Partition, § 11, p. 17 [“A voluntary partition of property may be accomplished by a sale of the property and a division of the proceeds.”].)
 

 We therefore conclude that the association’s attempt to sell the complex to HP Moorpark is barred by Civil Code sections 1358 and 1359. Respondent HP Moorpark contends to the contrary that Civil Code section 1359, subdivision (b), permits voluntary partition of the complex’s common areas. Subdivision (b) states: “The owner of a separate interest in a condominium project may maintain a partition action as to the entire project as if the owners of all of the separate interests in the project were tenants in common in the entire project in the same proportion as their interests in the common areas.” HP Moorpark argues that the term “may” in this provision sanctions nonjudicial partition. We are not persuaded. Viewed in context, the term “may” merely clarifies that any owner is permitted to bring a partition action, but no
 
 given
 
 owner must do so. It does not eliminate the requirement for judicial partition.
 

 Respondent association contends that Civil Code section 1468 implicitly authorizes voluntary partition of the complex’s common areas. Section 1468, subdivision (c), provides that in the case of real property owned by tenants in common, covenants concerning “the suspension of the right of partition or sale in lieu of partition” may run with the land only “for a period which is reasonable in relation to the purpose of the covenant . . . .” However, section 1468 is a statute of general application, and as such, is controlled by the more specific provisions of Civil Code sections 1358 and 1359.
 
 (San Francisco Taxpayers Assn.
 
 v.
 
 Board of Supervisors
 
 (1992) 2 Cal.4th 571, 577 [7 Cal.Rptr.2d 245, 828 P.2d 147],)
 
 [5]
 

 Respondent HP Moorpark contends that certain provisions of the CC&R’s permit the association to sell the complex without a judicial partition, and that these provisions amount to “enforceable equitable servitudes” under
 
 *1407
 
 Civil Code section
 
 [6]
 
 However, as we explain below (see section C.,
 
 post),
 
 the CC&R’s cannot be interpreted to permit a voluntary partition, and even if the CC&R’s purported to do so, the association may not rely on or enforce provisions of the CC&R’s that violate statutory law.
 
 (Frances T.
 
 v.
 
 Village Green Owners Assn.
 
 (1986) 42 Cal.3d 490, 499, fn. 6 [229 Cal.Rptr. 456, 723 P.2d 573, 59 A.L.R.4th 447].)
 

 Finally, respondents cite repealed provisions of the Civil Code and portions of legislative history for the proposition that Civil Code sections 1358 and 1359, despite their plain language, permit nonjudicial partition of the complex’s common areas. Again, we are not persuaded. When the language of a statute is clear and unambiguous, we do not resort to construction or extrinsic indicia of the Legislature’s intent.
 
 (Lungren
 
 v.
 
 Deukmejian, supra,
 
 45 Cal.3d at p. 735;
 
 City of Sacramento
 
 v.
 
 Public Employees’ Retirement System
 
 (1994) 22 Cal.App.4th 786, 794 [27 Cal.Rptr.2d 545].)
 

 In sum, on the record before us, there is no likelihood that HP Moorpark will ultimately prevail on the merits of its claim for quiet title.
 
 [7]
 

 2.
 
 Balance of Harms
 

 This conclusion presents a question about the strength of the showing concerning the balance of harms required of Willis, As our Supreme Court stated in
 
 King
 
 v.
 
 Meese, supra,
 
 43 Cal.3d at page 1227: “[T]he more likely it is that plaintiffs will ultimately prevail, the less severe must be the harm that they allege will occur if the injunction does not issue. This is especially true when the requested injunction maintains, rather than alters, the status quo. [Citation.]” Thus, “. . . if the party seeking the injunction can make a sufficiently strong showing of likelihood of success on the merits, the trial court has discretion to issue the injunction
 
 notwithstanding that party’s inability to show that the balance of harms tips in his favor.
 
 [Citation.]”
 
 (Common Cause
 
 v.
 
 Board of Supervisors
 
 (1989) 49 Cal.3d 432, 447 [261 Cal.Rptr. 574, 777 P.2d 610], italics added.) We therefore conclude that the trial court abused its discretion in denying Willis’s request for an injunction if Willis made a sufficiently clear (albeit modest) showing that Willis would suffer harm if the injunction were denied.
 

 Here, Willis argued, inter alia, that the injunctive relief that it sought preserved the status quo, and it presented evidence that HP Moorpark had
 
 *1408
 
 taken down a security fence and had removed undamaged window units and other materials from the complex. The association and HP Moorpark responded that Willis’s preliminary injunction would disrupt the status quo, and that HP Moorpark’s activities prevented harm to the complex. HP Moorpark presented evidence that the City of Los Angeles intended to demolish the complex unless repairs were undertaken, and that demolition would reduce the complex’s market value by $1.2 million. Furthermore, it submitted evidence that it had provided security for the complex, and that it had begun to rehabilitate the complex.
 

 On this record, Willis’s preliminary injunction would preserve the status quo, which “ ‘has been defined to mean “the last actual peaceable, uncontested status which preceded the pending controversy.” ’ [Citation.]”
 
 (Voorhies
 
 v.
 
 Greene
 
 (1983) 139 Cal.App.3d 989, 995 [189 Cal.Rptr. 132], quoting
 
 United Railroads
 
 v.
 
 Superior Court
 
 (1916) 172 Cal. 80, 87 [155 P. 463].) This supports granting the preliminary injunction.
 
 (King
 
 v.
 
 Meese, supra,
 
 43 Cal.3d at p. 1227.) Furthermore, Willis’s uncontradicted evidence that HP Moorpark was carrying away items of realty from the complex is sufficient to establish some irreparable injury, even in the absence of proof of their pecuniary value.
 
 (Eames
 
 v.
 
 Philpot
 
 (1925) 72 Cal.App. 151, 157 [236 P. 373];
 
 Conde
 
 v.
 
 Sweeney
 
 (1911) 16 Cal.App. 157, 162-163 [116 P. 319]; 6 Witkin, Cal. Procedure (4th ed. 1997) Provisional Remedies, § 303, p. 241.)
 

 Respondents attempt to overcome this showing with evidence of the city’s threatened demolition of the complex. It is well settled that an injunction should not issue when the party seeking the injunction will not succeed on the merits, even though its issuance might prevent irreparable harm, because “. . . there is no justification in delaying that harm where, although irreparable, it is also inevitable. [Citation.]”
 
 (Choice-in-Education League
 
 v.
 
 Los Angeles Unified School Dist.
 
 (1993) 17 Cal.App.4th 415, 422 [21 Cal.Rptr.2d 303];
 
 lessen
 
 v.
 
 Keystone Savings & Loan Assn., supra,
 
 142 Cal.App.3d at p. 459.)
 

 This case presents a different but closely related issue, namely, whether an injunction should issue because HP Moorpark, which opposes the injunction, cannot prevail on the strength of its title, even though HP Moorpark’s assertion of its manifestly Infirm title prevents damage by a third party. In our view, the reasoning cited above also encompasses the situation before us. Because HP Moorpark’s title is infirm and the potential damage to the complex is avoided solely by HP Moorpark’s flimsy assertion
 
 *1409
 
 of that title, there is no justification in delaying harm which, although perhaps irreparable, is also inevitable.
 
 [8]
 

 In sum, Willis has made a clear showing that it will suffer irreparable harm absent injunctive relief, and respondents failed to make a cognizable countervailing showing of harm. Because HP Moorpark, on the record before us, cannot prevail on the merits, it was an abuse of discretion to deny Willis’s request for injunctive relief. (See
 
 Bullocks. City and County of San Francisco
 
 (1990) 221 Cal.App.3d 1072, 1102 [271 Cal.Rptr. 44] [trial court erred in denying plaintiff’s request for injunctive relief against defendant city’s enforcement of invalid statute because plaintiff’s showing of injury outweighed any interest city may have in enforcing statute].)
 
 [9]
 

 C.
 
 Grant of Preliminary Injunction in Partition Action
 

 VRT contends that the trial court erred in granting the association’s request for a preliminary injunction prohibiting VRT from foreclosing on its deeds of trust on 28 units in the complex. Again, we agree.
 

 Because VRT does not dispute that the association has a reasonable likelihood of success in the partition action, the key issue is whether the association established that the balance of harms favored it. On this matter, the association argued that VRT intended to foreclose on the 28 liens, take control of the association, and prevent the sale to HP Moorpark. The association thus reasoned that absent injunctive relief, parties holding interests in the complex would lose not only the proceeds from the sale to HP Moorpark, but also their equity and security because the city planned to demolish the complex if HP Moorpark halted repairs.
 

 The association’s showing thus hinges on the key legal issue presented by HP Moorpark’s claim to the complex in the quiet title action, namely,
 
 *1410
 
 whether the association could convey the complex to HP Moorpark in the absence of judicial partition. However, as we have explained, HP Moor-park’s claim to the complex must fail on the record before us. (See pt. B.,
 
 ante.)
 
 Because the association’s attempt to protect this sale has no reasonable probability of success on the record before us, there is no justification in barring foreclosures by VRT, even though the foreclosures may cause irreparable harm.
 
 (Choice-in-Education League
 
 v.
 
 Los Angeles Unified School Dist., supra,
 
 17 Cal.App.4th at p. 422;
 
 lessen
 
 v.
 
 Keystone Savings & Loan Assn., supra,
 
 142 Cal.App.3d atp. 459.) In our view, the lienholder’s interest cannot be impaired on the grounds presented by the association.
 

 The association contends that the injunction does not harm VRT because VRT has no right to foreclose on the real property securing its notes, and because the injunction does not affect VRT’s remaining right to a share of the proceeds from the sale to HP Moorpark. The association argues that VRT took its notes subject to the CC&R’s and with notice of the association’s recorded intentions not to repair and to sell the complex, and the unit owners’ vote to sell the complex effected a nonjudicial partition of the complex, transforming VRT’s interest into a secured right to a portion of the proceeds from any sale of the complex.
 

 The association is mistaken because the CC&R’s cannot be construed to permit the unit owners or the association to partition the complex by nonjudicial means. The CC&R’s are interpreted according to the standard canons for interpreting written instruments.
 
 (Ticor Title Ins. Co.
 
 v.
 
 Rancho Santa Fe Assn.
 
 (1986)
 
 111
 
 Cal.App.3d 726, 730 [223 Cal.Rptr. 175];
 
 Moss Dev. Co.
 
 v.
 
 Geary
 
 (1974) 41 Cal.App.3d 1, 8-10 [115 Cal.Rptr. 736].) Under these canons, the paramount consideration is the intent of the parties in executing the instmment, “so far as the same is ascertainable and lawful” (Civ. Code, § 1636; accord,
 
 Moss Dev. Co.
 
 v.
 
 Geary, supra,
 
 at p. 8), and thus the instrument is deemed to incorporate pertinent statutory law (1 Witkin, Summary of Cal. Law,
 
 supra,
 
 Contracts, § 692, pp. 625-626).
 

 The CC&R’s, which postdate the enactment of Civil Code sections 1358 and 1359, provide: “Except as provided in California Civil Code [section 1359], there shall be no judicial partition of the Common Areas,” and that the association can be granted “irrevocable power of attorney to sell the entire [complex]” by vote of the owners “when partition of the [complex] may be had under California Civil Code [section 1359] . . . .” As we have explained (see pt. B.l,
 
 ante),
 
 sections 1358 and 1359 bar any voluntary partition of the complex, and allow judicial partition only as described in section 1359, subdivision (b). Accordingly, the CC&R’s do not purport to permit voluntary or nonjudicial partition of the complex.
 

 
 *1411
 
 In sum, the trial court abused its discretion in granting the preliminary injunction.
 

 Disposition
 

 The order granting the association’s request for a preliminary injunction in the partition action (No. LC037523) is reversed, as is the order denying Willis’s request for a preliminary injunction in the quiet title action (No. LC040018). Appellants are awarded their costs.
 

 Epstein, J., and Czuleger, J.,
 
 *
 
 concurred.
 

 [1]
 

 For the first time on appeal and in a cursory fashion, respondent HP Moorpark contends that Willis lacks standing to seek an injunction because it is not a bona fide purchaser of two units in the complex. This issue was not raised before the trial court, and Willis supplied uncontroverted evidence of its title to two units in the complex. We observe that at least one of Willis’s deeds to the units was recorded before HP Moorpark’s deed to the complex, and thus there appear to be factual questions about whether Willis had notice of HP Moorpark’s claim to the complex. (See 4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 206, p. 411.) We decline to consider a theory unsupported by authority and raised in a manner that prevents Willis from developing the underlying facts. (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 1997) ¶ 8:241, p. 8-106.)
 

 [2]
 

 The amendment to the original agreement provides in pertinent part: “. . . [MWH] is willing to permit [the association] to sell the Property to [HP Moorpark] on the condition that in the event [HP Moorpark] elects in the future to rescind the sale, [MWH’s] right to purchase the Property will be reinstated on the terms and conditions set forth in the Agreement as amended.”
 

 [3]
 

 Subdivision (b) of Civil Code section 1359 provides in pertinent part: “. . . The court shall order partition under this subdivision only by sale of the entire condominium project and only upon a showing of one of the following: [¶] (1) More than three years before the filing of the action, the condominium project was damaged or destroyed, so that a material part was rendered unfit for its prior use, and the condominium project has not been rebuilt or repaired substantially to its state prior to the damage or destruction, [¶] (2) Three-fourths or more of the project is destroyed or substantially damaged and owners of separate interests holding in the aggregate more than a 50-percent interest in the common areas oppose repair or restoration of the project, [¶] (3) The project has been in existence more than 50 years, is obsolete and uneconomic, and owners of separate interests holding in the aggregate more than a 50-percent interest in the common area oppose repair or restoration of the project, [¶] (4) The conditions for such a sale, set forth in the declaration, have been met.”
 

 [4]
 

 In
 
 Biggi
 
 v.
 
 Biggi
 
 (1893) 98 Cal. 35, 37, 39-40 [32 P. 803], the court characterized such a contract between a husband and wife who jointly owned a parcel of real property as “an agreement for the division of their property,” but held only that the contract prevented either spouse from seeking a judicial partition until the contract was breached, and that the contract was enforceable.
 

 [5]
 

 For the same reason, we reject respondents’ contention on a related matter, namely, that the trial court’s rulings concerning both preliminary injunctions were authorized by Code of Civil Procedure section 872.130, which allows the trial court to grant appropriate injunction relief in an action for judicial partition under Code of Civil Procedure section 872.010 et seq. These provisions, like Civil Code section 1468, are general in their application, and thus are controlled by Civil Code sections 1358 and 1359.
 

 [6]
 

 Subdivision (a) of Civil Code section 1354 provides: “The covenants and restrictions in the [CC&R’s] shall be enforceable equitable servitudes, unless unreasonable, and shall inure to the benefit of and bind all owners of separate interests in the development.”
 

 [7]
 

 This does not dispose of the need for a trial because there are potentially outstanding factual issues about Willis’s claim for quiet title. (See fn. 1,
 
 ante.)
 

 [8]
 

 Respondents suggest that the trial court’s ruling should be affirmed because Willis has unclean hands. They cite evidence that VRT once applied for a building permit by falsely claiming to be the complex’s owner. However, “[t]he misconduct which brings the unclean hands doctrine into operation must relate directly to the transaction concerning which the complaint is made, i.e., it must pertain to the very subject matter involved and affect the equitable relations between the litigants.”
 
 (Fibreboard Paper Products Corp,
 
 v.
 
 East Bay Union of Machinists
 
 (1964) 227 Cal.App.2d 675, 728 [39 Cal.Rptr. 64].) Although the record discloses that VRT and Willis are affiliated in some unspecified manner, there is no evidence that VRT’s misconduct should be assigned to Willis, and thus, no basis for applying the unclean hands doctrine. (Cf.
 
 Pepper
 
 v.
 
 Superior Court
 
 (1977) 76 Cal.App.3d 252, 258 [142 Cal.Rptr. 759] [doctrine inapplicable to relief sought by decedent’s estate because no basis provided for attributing prior misconduct by decedent to estate].)
 

 [9]
 

 Given this conclusion, we do not address Willis’s contentions that the trial court erred in declining to consider Willis’s reply to the oppositions to its request and to hear evidentiary objections to respondents’ evidence.
 

 *
 

 Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article . VI, section 6 of the California Constitution.