Filed 10/29/15  Mukai v. Singh CA3

<u>**NOT TO BE PUBLISHED**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sutter)

----

|  |  |
|---|---|
| LISA MUKAI, as Trustee, etc., | C077273 |
| Plaintiff and Respondent, | (Super. Ct. No. CVCS 14-1361) |
| v. | |
| REBECCA SINGH et al., | |
| Defendants and Appellants. | |

Defendants and appellants Rebecca Singh, Winning Hit LLC (the Company), and Ralie G. Singh, individually and as trustee of the Ralie G. Singh and Stella M. Singh 1998 Family Revocable Trust, appeal from an order granting a preliminary injunction in favor of plaintiff and respondent Lisa Mukai, as trustee of the Chima Childrens (*sic*) Trust (the Chima Trust).[1]  We will affirm.

---

[1] Rebecca Singh is the daughter of Ralie G. Singh and Stella M. Singh.  Because these three individuals share a surname, we will refer to them by their first names; no disrespect is intended.  Rebecca was married to Geneal Chima (Geneal) in 1997, they

## FACTUAL AND PROCEDURAL BACKGROUND

Rebecca has been a member and the manager of the Company since its formation in February 1998. As of formation of the Company, Rebecca held a 51 percent interest in the Company and the Chima Trust held a 49 percent interest. In 2001, Rebecca transferred to the Company a parcel of real property located in Sutter County (the Property), which she held as her separate property.

Subsequently, there was litigation among Rebecca, the Chima Trust, and Ralie and Stella's trust regarding ownership of the Property (Sutter County Super. Ct. case No. CVCS 08-2478). After that litigation commenced, Rebecca transferred the Property to Ralie and Stella's trust. In its statement of decision, the trial court in that case found that title to the Property was quieted in the Company, that the operative operating agreement for the Company was one dated February 9, 1998, and that Rebecca had breached her fiduciary duties to the Chima Trust by conveying the Property from the Company to herself in 2006.[2] This statement of decision became final when the trial court issued its judgment in October 2013. In its judgment, the trial court also held that Ralie and Stella's trust held the Property in constructive trust for the Company and that the Chima Trust maintained a 49 percent interest in the Company.

---

separated in 2006, and as of June 2013, there was a pending divorce action. They had no children together, but Geneal had two children from a prior marriage. These children are the beneficiaries of the Chima Trust. Rebecca previously served as trustee of the Chima Trust from September 1998 to February 2009.

[2] The trial court in this prior litigation also found that the Chima Trust had become a 49 percent member when Rebecca executed the operating agreement for the Company and the certificate of ownership showed the Chima Trust held a 49 percent interest. The trial court further found Rebecca was estopped from arguing that the Chima Trust had failed to make its initial contribution to the Company as was required by the operating agreement.

2

The operating agreement dated February 9, 1998, which was drafted pursuant to Rebecca's instruction, provides that the business of the Company includes, but is not limited to "managing investments, personal and real property." The operating agreement also provides that the manager "has, subject to the control of the Members, general supervision, direction, and control of the business of the LLC . . . [and] shall have the general powers and duties of management typically vested in the office of president of a corporation, and such other powers and duties as may be prescribed by the Members." However, the manager may not, without "the unanimous agreement of the Members which is evidenced in a writing," "[d]o any act which would make it impossible to carry on the Business of the LLC." Further, members are not required to make additional capital contributions unless so agreed by all members. If a member fails to make a required additional capital contribution, he loses the right to participate in the management of the Company but does "not forfeit [his] rights to distributions and Net Profits and Net Loss allocations." The operating agreement could be amended with approval of a majority in interest of the members of the Company.

In March and April 2014, the Chima Trust sought an accounting and report from Rebecca, particularly as regards the Property. Rebecca failed to provide any such accounting. In June 2014, Rebecca caused to be recorded against the Property a deed of trust identifying a promissory note in favor of Rebecca in the amount of $1,205,680.15 plus interest and another deed of trust in favor of Ralie and Stella Singh in the amount of $1,411,838.42 plus interest. In July 2014, the Chima Trust learned Rebecca was marketing the Property for sale, and it requested information about the sale and documentation supporting imposition of the liens. Rebecca did not provide any information, and proceeded with a sale of the Property to third parties and distribution of the sale proceeds to herself and her parents, without providing notice to the Chima Trust. The information provided to the trial court justifying these deeds of trust included

3

invoices dated July 14, 2014, which indicated the Company owed Rebecca for unpaid management fees of $24,000 per year, loans she made to the Company, to pay her back for property taxes and "trees," and as relates to another lawsuit, and that the Company owed her parents for payments they made against the Company's farm loans and property taxes, management fees for the period 2009 through 2014, for "trees," and for their attorney fees from the earlier litigation.

The Chima Trust sued defendants seeking, inter alia, injunctive relief. Specifically, the Chima Trust sought a preliminary injunction preventing Rebecca, the Company, Ralie and Stella, and their trust from "[t]ransferring, assigning, spending, disbursing or otherwise dissipating" any assets belonging to the Company or any proceeds from the sale of the Property and requiring a return of the proceeds from the sale to a blocked account. The closing statement indicated that the sale proceeds of $1,856,680 were disbursed to pay off the remaining farm credit loans in the amount of $410,008.92, to pay a loan from Ralie and Stella Singh in the amount of $1,415,228.06, to pay a loan from Rebecca in the amount of $27,433.87, and to pay for closing costs.

Defendants opposed the preliminary injunction, arguing the Chima Trust could not show a probability of prevailing on the merits because the sale was contemplated by the statement of decision in the earlier litigation; the Property had been sold at fair market value; and the escrow proceeds had been properly distributed. Defendants also argued that pursuant to recent amendments to the Company's operating agreement, which were approved by Rebecca as majority member of the Company on June 14, 2014, the Chima Trust was not entitled to any distribution of sale proceeds. The amendments provide that a member's percentage interest would be affected and governed by its relative capital account, the percentage interest could be restated by the manager based on fluctuations of the capital account, a member's voting interest was directly proportional to its percentage interest, a member with a negative capital account is not entitled to any distribution, and

4

when a member fails to timely make a capital contribution the member's interest terminates. The amendments also authorized the manager to act on a vote of the majority of members in all situations.

The Chima Trust argued the amendment of the Company's operating agreement was improper pursuant to Corporations Code section 17704.07, subdivision (c)(4)(A);[3] the distribution was not authorized by earlier litigation; and the amounts "owed" were improper because they were not supported by documentation, were stale claims, were based on exorbitant management fees and included $856,196 in attorney fees and costs for which the Company was not obligated, and were not offset by the income Ralie and Stella received from the Property.

At the hearing on the preliminary injunction, defendants argued the sale of the Property was permitted, regardless of the interpretation of section 17704.07, because it was in the ordinary course of business. The Chima Trust argued the Company was in the farming business and that the sale was not in the ordinary course of business, as evidenced by the Company's farm credit loans, that the Property was the Company's only asset, that the Property had been held by the Company for 13 years, and that the Property was leased to a tenant farmer under a 10-year lease. The Chima Trust further argued that even if Rebecca as manager or majority member had the power to sell the Property, the sale proceeds were improperly diverted to Ralie and Stella.

The trial court found "this is an appropriate case for the issuance of [a] preliminary injunction. It appears that the plaintiffs are entitled to relief as a possibility or a probability. There's been irreparable harm to the plaintiffs. The defendants are acting in a way to make such that any judgment that the plaintiffs might be recovering ineffectual. And so the restraining order—the temporary restraining order is going to become a

---

[3] Undesignated statutory references are to the Corporations Code.

5

preliminary injunction." It thus issued the preliminary injunction preventing Rebecca, Ralie and Stella, and their trust from "[t]ransferring, assigning, spending, disbursing or otherwise dissipating" the proceeds from the sale of the Property or any assets of the Company, ordering defendants to deposit all proceeds from the sale into an interest bearing blocked bank account and filing proof of that deposit with the trial court, and ordering the Chima Trust to post an undertaking. Once the undertaking was posted, the trial court issued an order directing Rebecca, Ralie, Stella, and their trust to deposit the funds into a blocked account. Defendants timely appealed.[4]

## DISCUSSION

Defendants contend the trial court erred in granting the preliminary injunction in that the Chima Trust had not shown any probability of success on the merits where (1) the Property was sold in the ordinary course of business and (2) the Chima Trust was not harmed by the distribution of sale proceeds because it was not entitled to any Company assets or income due to its failure to make capital contributions. We do not decide whether the Property was sold in the ordinary course of business because we conclude defendants have forfeited the contention that the Chima Trust has failed to make additional capital contributions by failing to cite any evidence in the record to support that claim, and because there is substantial evidence that Rebecca, as manager of the

---

[4] In addition to appealing the order issuing the preliminary injunction, defendants purport to appeal from the trial court's latter order mandating a deposit of the funds into a blocked account. The trial court conditionally ordered this deposit of funds as part of the preliminary injunction, dependent on the Chima Trust posting an undertaking. Therefore, once the Chima Trust posted the undertaking, the trial court issued this subsequent order merely to effectuate the preliminary injunction. To the extent defendants are claiming this order is separately appealable, we find no authority for such an appeal, and defendants have provided none. (Cf. Code Civ. Proc., § 904.1 [appeal may be taken from an order granting or refusing to grant an injunction].) Therefore, we do not separately address this subsequent order.

Company, violated her fiduciary duties to the Chima Trust. Therefore, it was not an abuse of discretion for the trial court to award injunctive relief to the Chima Trust.

In deciding whether to issue a preliminary injunction to a plaintiff, a trial court must weigh two interrelated factors: (1) the plaintiff's likelihood of success on the merits at trial and (2) the harm to the plaintiff if the injunction is not issued against the harm to the defendant if it is. (*Butt v. State of California* (1992) 4 Cal.4th 668, 677-678.) The greater the plaintiff's showing on one factor, the less must be shown on the other to warrant issuance of an injunction. (*Id.* at p. 678.) Nonetheless, "[a] trial court may not grant a preliminary injunction, regardless of the balance of interim harm, unless there is some possibility that the plaintiff would ultimately prevail on the merits of the claim." (*Ibid.*)

Generally, the decision to grant or deny a preliminary injunction rests in the sound discretion of the trial court. (*IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 69.) Thus, our review of an order granting a preliminary injunction is limited to determining whether the trial court abused its discretion in weighing the probability of success and risk of harm. (*Teachers Ins. & Annuity Assn. v. Furlotti* (1999) 70 Cal.App.4th 1487, 1493.) "When, as here, the trial court is presented with evidence on the two factors . . . but fails to make express findings, we presume that the trial court made appropriate factual findings [citation] and review the record for substantial evidence to support the rulings [citation]." (*14859 Moorpark Homeowner's Assn. v. VRT Corp.* (1998) 63 Cal.App.4th 1396, 1402.) However, to the extent the resolution of whether a party has shown a probability of success on the merits turns on a question of law, we review that determination de novo. (*Id.* at p. 1403.)

We first note the trial court and the Chima Trust misconstrued the applicability of the provisions of the California Revised Uniform Limited Liability Company Act (RULLCA; § 17701.01 et seq.) and, more particularly, section 17704.07, to the

7

Company.  Contrary to the Chima Trust's argument, with certain exceptions, the RULLCA sets forth *default* rules that govern "[t]o the extent the operating agreement does not otherwise provide for a matter . . . ."  (§ 17701.10, subd. (b).)  As relevant here, section 17704.07 provides that a manager in a manager-managed limited liability company may neither "[s]ell, lease, exchange, or otherwise dispose of all, or substantially all, of the limited liability company's property . . . outside the ordinary course of the limited liability company's activities" nor "[a]mend the operating agreement" without the consent of all members of the limited liability company.  (§ 17704.07, subd. (c)(4)(A), (D).)  The RULLCA does *not* prevent a limited liability company from electing to employ majority approval rather than unanimous consent for these acts.  Thus, under the RULLCA and the terms of the operating agreement dated February 9, 1998, Rebecca could amend the operating agreement without the Chima Trust's consent.  However, we need not and do not decide whether the amendments Rebecca approved on June 14, 2014, were proper.  Nor do we decide whether she was authorized to sell the Property in the ordinary course of business or with approval of a majority of the members, as provided in the amended operating agreement, because the preliminary injunction could properly be issued based on the Chima Trust's contention that Rebecca violated her fiduciary duties.

The RULLCA provides that a manager in a manager-managed limited liability company (1) owes a duty of loyalty to the limited liability company and its members to account to the limited liability company, to refrain from dealing with the limited liability company as or on behalf of another having an interest adverse to the limited liability company, and to refrain from competing with the limited liability company; (2) owes a duty of care to the limited liability company; and (3) owes an obligation to discharge his or her duties to the limited liability company with good faith and fair dealing. (§ 17704.09, subds. (b)-(d), (f).)  These duties generally may *not* be altered by the operating agreement.  (§ 17701.10, subd. (c)(4)-(5).)

Here, the Chima Trust presented evidence that Rebecca, as manager of the Company, failed to account to the Chima Trust regarding the status of the Property despite repeated requests for information, accepted improper creditor claims from herself and her parents, caused liens to be recorded against the Property based on those improper claims and contrary to the Company's interests, and authorized distribution of proceeds from the sale of the Company's sole asset in accordance with those improper lien claims. This is substantial evidence to support the trial court's implicit findings that the Chima Trust had shown a probability of success on the merits and irreparable harm warranting the grant of the preliminary injunction in favor of the Chima Trust.

This does not mean the Chima Trust will ultimately prevail on the merits. (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1136 ["an appellate decision [affirming or reversing the award of a preliminary injunction] usually does not constitute a final adjudication of the ultimate rights in controversy; it merely determines whether the superior court abused its discretion based on the record before it at the time of the ruling"].) Indeed, if the June 2014 amendments to the operating agreement were proper and if, as defendants contend on appeal, the Chima Trust has not made required additional capital contributions and has a negative capital account, the Chima Trust would no longer be a member of the Company pursuant to the terms of the amended operating agreement and would not be entitled to any distribution of the Company assets. In that circumstance, Rebecca would not owe any fiduciary duties to the Chima Trust.

However, defendants have not cited any portion of the record that affirmatively shows that the Chima Trust has a negative capital account, that the Chima Trust has been asked to make an additional capital contribution, or that the Chima Trust has otherwise violated the operating agreement. [5] (*Duarte v. Chino Community Hospital* (1999)

---

[5] At oral argument, counsel for Rebecca argued that her declaration submitted in support of her opposition to the issuance of the preliminary injunction provides evidence that she

9

72 Cal.App.4th 849, 856 [" 'It is the duty of a party to support the arguments in its briefs by appropriate reference to the record, which includes providing exact page citations.' [Citations.] If a party fails to support an argument with the necessary citations to the record, that portion of the brief may be stricken and the argument deemed to have been [forfeited]."].) Nor does our review of the record reveal any such evidence was presented to the trial court. Therefore, defendants have not shown the trial court abused its discretion by granting the preliminary injunction in favor of the Chima Trust.

---

contributed additional capital and that the Chima Trust did not. We disagree with counsel's interpretation of Rebecca's declaration. The declaration recounts that during the prior litigation Geneal proffered a theory that the Chima Trust's additional capital contributions were excused by his efforts in a variety of real estate transactions he completed on behalf of the Company and that he did not provide a document showing a payment by or on behalf of the Chima Trust to the Company. This does not, however, provide evidence that the Chima Trust or Geneal agreed to additional capital contributions, or that the Chima Trust or Geneal were requested to make additional capital contributions. Indeed, the declaration further provides that "whether [the Chima Trust] has a zero capital account or not was not decided" in the earlier litigation. Moreover, at the hearing on whether to issue the preliminary injunction, Rebecca did not argue she had shown the Chima Trust had a negative capital account; instead, she argued that once things "get going . . . and the time is appropriate" she would show the Chima Trust's capital account is negative.

## DISPOSITION

The order granting a preliminary injunction in favor of the Chima Trust is affirmed.  Plaintiff and respondent the Chima Trust is awarded its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


                                                      BUTZ              , Acting P. J.



We concur:



        MAURO          , J.



        RENNER         , J.



11