Filed 3/7/16  Qui v. Yuan CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| DONGXIA QIU et al., | |
| Plaintiffs and Respondents, | E061987 |
| v. | (Super.Ct.No. MCC1401032) |
| ZHENG YUAN et al., | OPINION |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County.  Sharon J. Waters, Judge.
Affirmed.

Law Offices of Sam X. J. Wu, Sam X. J. Wu, Helen W. Quan and William G.
Barrett for Defendants and Appellants.

Ardent Law Group, Hubert H. Kuo and Alexander J. Chang for Plaintiffs and
Respondents.

Zheng Yuan and Jiangmin Li, defendants and cross-complainants in the
underlying consolidated actions, appeal an order modifying a preliminary injunction.

1

They contend that the trial court abused its discretion by (1) determining that plaintiffs and cross-defendants Dongxia Qiu and Jianhe Bao demonstrated a reasonable likelihood of success on their complaint, (2) determining that plaintiffs were likely to suffer irreparable harm, (3) issuing a mandatory preliminary injunction, and (4) requiring an insufficient bond.[1]

As we discuss, defendants' contentions concerning the plaintiffs' likelihood of success and irreparable harm or balancing of the hardships are moot, in that those issues were resolved when the court issued the original preliminary injunction. Having failed to appeal from the order granting the original injunction, defendants cannot now challenge it. With respect to the modification of the preliminary injunction, we find no abuse of discretion. Accordingly, we will affirm the judgment.

BACKGROUND

A preliminary injunction may be issued based upon facts stated in a verified complaint, along with oral testimony and/or affidavits or declarations submitted in support of issuance of the preliminary injunction. (*IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 69.) As the appealing party, defendants have the burden to provide a record on appeal sufficient to demonstrate both error and prejudice. (*Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132; *In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 337.) However, they have not included in the record on appeal

---

[1] Defendant Li is Yuan's wife or purported wife. The record does not establish the role of plaintiff Bao. We will refer to Yuan and Li individually by name or collectively as defendants, and to Qiu and Bao individually by name or collectively as plaintiffs.

2

either the complaint or the declaration referred to in plaintiffs' original motion, and there was no oral testimony. In light of this omission, we will assume that the facts stated in plaintiffs' motion for the original preliminary injunction are supported by the omitted complaint (we will also assume that the complaint was verified) and the omitted declaration in support of the motion. We will draw other facts from the declarations that are contained in the record.[2]

Qiu is a Chinese citizen and resident who wanted to obtain an EB-5 immigration visa for herself and her family. To qualify for an EB-5 visa, a potential immigrant must invest $1 million in a business enterprise in the United States. Qiu was introduced to Yuan and Li by a mutual friend. She entered into an agreement with Yuan, a resident of California, which provided that they would set up a corporation for the purpose of starting a used car dealership in California. Initially, they agreed that they would both invest $500,000.[3] Later, Yuan informed Qiu that this was not sufficient to fund the business, and they agreed that each would invest $1 million. Yuan agreed to lend Qiu $200,000 to assist Qiu with living expenses once she and her children arrived in the United States. Ultimately, they entered into an agreement that Qiu would fund the

---

[2] Both plaintiffs and defendants assert facts in their briefing which are not supported by citations to the record and some of which do not actually appear in the record on appeal. We disregard all such assertions. (Cal. Rules of Court, rule 8.204(a)(1)(C), (e).)

[3] Qiu initially understood that $500,000 was the minimum investment required for the EB-5 program. It appears, however, that an investment of $1 million was required, unless the business was to be set up in a "targeted employment area," i.e., a high unemployment or rural area.

business with $1 million and Yuan would set up and operate the business. Each would be a 50 percent owner of the business. The funds Qiu provided were deposited into a bank account in the name of the corporation, VVV Auto Center, Inc. (VVV).

Qiu was VVV's chief executive officer and a director of the corporation. Nevertheless, she did not have access to the corporate bank account or its records. She learned, however, that Yuan had transferred a total of $832,000 out of the account. The transfers were $500,000, $300,000 and $32,000. When Qiu demanded an accounting, Yuan ceased all communication with her.

A representative of Bank of America informed Qiu that on June 16, 2014, Li transferred $35,000 to the account of Li and Yuan's jewelry business. The representative also told her that on June 30, 2014, a transfer of $32,000 was made, ostensibly to pay Yuan's wages from March through June 2014.

Yuan stated that he used the $32,000 to buy a vehicle, a Dodge Sprinter, for VVV. Yuan explained that the $300,000 transfer from the account was in part to cover the $200,000 loan he agreed to make to Qiu for her living expenses and the remaining $100,000 was to "reimburse the officers for expenses and employee salary." The expenses he itemized, however, amounted to less than $20,000. He also stated that VVV had entered into a contract to purchase one hundred used cars, for a total of $630,000, including "offshoring and freight," from a company in North Korea. The contract required a deposit of $150,000, which he paid. He stated that the withdrawal of $500,000 from the corporate account was intended to pay toward the purchase of the cars.

4

However, he stated, he had returned the funds to the corporate account on July 3, 2014, after learning that Qiu intended to "halt operations and eventually sue us."

Qiu stated that she and Yuan never discussed payment of a monthly salary of $8,000 or the purchase of a vehicle for the corporation. They never discussed purchasing cars from a North Korean company, and Yuan did not obtain her consent to do so. Some of the expenses Yuan claimed appeared to be in connection with attending a jewelry show in San Mateo, for the benefit of Yuan and Li's jewelry business. Moreover, Qiu had given Yuan $40,000 to cover start-up costs. The $200,000 loan was to be made by Yuan personally and not taken from the corporate account. Apart from any other considerations, Yuan's practice of transferring money from the corporate account to his own account to pay business activities was in conflict with the requirements of the EB-5 program, as was his hiring of casual "runners" to assist with the business. The EB-5 program required hiring at least 10 full-time employees. Moreover, the contract to purchase the cars appears to be in violation of a presidential executive order imposing a trade embargo on North Korea and in any event to be infeasible, given the stringent requirements for importation of used vehicles into the United States, established by the United States Environmental Protection Agency.[4] A declaration from an experienced importer of used vehicles stated that "it is nearly impossible for a company to import one hundred used cars into the United States because vehicles not originally manufactured for

---

[4] Qiu apparently filed a request for judicial notice of documents supporting these conclusions. The request for judicial notice is not included in the record on appeal, but the declaration of an attorney in support of the request is included.

the United States often do not meet the [Department of Transportation's] and the [Environmental Protection Agency's] stringent standards." "If [the vehicles] do not [conform] with the requirements, [they] would not be able to gain entry."

Based on the foregoing facts, the trial court issued a preliminary injunction on August 19, 2014, prohibiting Yuan and Li from transferring or using any funds deposited by plaintiffs into the Bank of America account for VVV.[5] In addition, Yuan and Li were ordered to provide immediate access to plaintiffs to the records of the bank account, "including possible online access," and to maintain in the account all funds pending trial. The court ordered plaintiffs to post a bond in the amount of $10,000.

On August 27, 2014, plaintiffs filed an ex parte application for modification of the preliminary injunction. They stated that defendants had misrepresented to the court the status of the corporate account. On August 26, 2014, when plaintiffs were given the banking records, they learned that defendants had emptied and closed the corporate account on or before July 10, 2014. This was two weeks before plaintiffs filed their application for the temporary restraining order and the preliminary injunction. Accordingly, they asked the court to modify the preliminary injunction to require defendants to identify the whereabouts of all corporate funds and to place all corporate funds in their possession or under their control into the trust account of plaintiffs' counsel.

---

[5] A temporary restraining order was issued on July 30, 2014. No issues pertaining to that order are raised in this appeal.

In their opposition to the request for modification, defendants sought to relitigate the issues of the likelihood that plaintiffs would prevail on the merits of the underlying action, irreparable harm and balancing of the hardships. They did not provide any facts that were not previously presented to the court with respect to those issues, nor did they deny or seek to explain their actions in emptying and closing the corporate account and representing to the court that the $500,000, at least, had been redeposited into the account prior to the hearing on the original preliminary injunction motion.

After a hearing on September 18, 2014, the court issued a modified preliminary injunction. It ordered defendants to transfer $257,431.83 currently kept in Li's Wells Fargo bank account into a new account to be jointly set up by the parties; to transfer $430,000 currently kept in Li's Bank of Communications account into the same new account; and to transfer any other funds that originated from VVV's Bank of America account into the same new account. All funds were to be transferred by September 24, 2014. The court ordered that all parties were to have "viewing access" only to the account, and that all parties were barred from transferring or using the funds in the new account until trial or an earlier resolution. The court did not require any further undertaking from plaintiffs.

On September 24, 2014, defendant filed a notice of appeal from the September 18, 2014 order.

# LEGAL ANALYSIS

*General Principles Pertaining to Preliminary Injunctions; Standard of Review*

"In determining whether to issue a preliminary injunction, the trial court considers two related factors:  (1) the likelihood that the plaintiff will prevail on the merits of its case at trial, and (2) the interim harm that the plaintiff is likely to sustain if the injunction is denied as compared to the harm that the defendant is likely to suffer if the court grants a preliminary injunction.  [Citation.]  'The latter factor involves consideration of such things as the inadequacy of other remedies, the degree of irreparable harm, and the necessity of preserving the status quo.'  [Citation.]"  (*14859 Moorpark Homeowner's Assn. v. VRT Corp*. (1998) 63 Cal.App.4th 1396, 1402 (*Moorpark*).)  "[S]tatus quo" has been defined to mean "'"'the last actual peaceable, uncontested status which preceded the pending controversy.'"  [Citation.]'"  (*Id.* at p. 1408.)

"The determination whether to grant a preliminary injunction generally rests in the sound discretion of the trial court.  [Citation.]  'Discretion is abused when a court exceeds the bounds of reason or contravenes uncontradicted evidence.  [Citation.]'"  (*Moorpark*, *supra*, 63 Cal.App.4th at p. 1402.)  We reverse an order granting a preliminary injunction if the trial court has abused its discretion in ruling on one of the pertinent factors.  (*Ibid*.)  The party challenging the injunction bears the burden of making a clear showing of abuse of discretion.  (*IT Corp*. *v. County of Imperial*, *supra*, 35 Cal.3d at p. 69.)  We review the trial court's factual findings for substantial evidence:  "[I]f the evidence before that court was in conflict, we do not reweigh it or determine the credibility of witnesses.  '[T]he trial court is the judge of the credibility of the affidavits filed in support of the application

8

for preliminary injunction and it is that court's province to resolve conflicts.' [Citation.] Further, if the evidence on the application is in conflict, we must interpret the facts in the light most favorable to the prevailing party and indulge in all reasonable inferences in support of the trial court's order." (*Hilb, Rogal & Hamilton Ins. Services v. Robb* (1995) 33 Cal.App.4th 1812, 1820.)

*Scope of Appeal*

Defendants make five arguments: That plaintiffs failed to show interim/irreparable harm; that defendants are harmed by the injunction; that this is not an extreme case warranting a mandatory injunction; that plaintiffs failed to show that they are likely to succeed on the merits; and that plaintiffs should have been required to post a substantial undertaking. Four of these contentions are not cognizable in this appeal.

An order granting a preliminary injunction is an appealable order. (Code Civ. Proc., § 904.1, subd. (a)(6).) An order modifying a preliminary injunction is also appealable as "'an order granting . . . an injunction.'" (*Chico Feminist Women's Health Center v. Scully* (1989) 208 Cal.App.3d 230, 251 (*Chico*), citing *People v. Associated Oil Co.* (1931) 212 Cal. 76, 77-78.) Citing *Chico*, plaintiffs contend that defendants' failure to appeal from the August 19, 2014 order granting the original preliminary injunction necessarily limits the issues on appeal to those pertaining solely to the modified preliminary injunction. Specifically, they contend that defendants cannot challenge the trial court's findings that they are likely to prevail on the merits and that they would suffer irreparable harm if the injunction was not issued because both of those issues were resolved in connection with the original preliminary injunction. They also contend that

9

defendants cannot challenge the amount of the bond for two reasons. First, the amount was set in connection with the original injunction, and second, at the hearing on the modification of the injunction, defendants effectively stipulated to the amount originally ordered. Defendants do not address these contentions in their reply brief.

In *Chico*, *supra*, 208 Cal.App.3d 230, the court held that on appeal from a modified preliminary injunction, a party should not be allowed to challenge the modified injunction on any ground that could have been raised on appeal from the original preliminary injunction. To do so "would allow [the party] two appeals on identical grounds. Moreover, if [doing so] were allowed, it would theoretically allow wholesale challenges to a preliminary injunction many years after its entry, merely because a court modified the injunction in some insignificant manner and even though the trial court was never given a chance to cure the asserted illegality. [Citation.] In the absence of some showing as to how the amendment of the injunction affected the challenged paragraphs, and in the absence of a motion by defendants to dissolve the paragraphs, we can think of no reason why defendants should be able to avoid the ordinary time to appeal from the order entering the preliminary injunction." (*Id.* at p. 252.)

Here, unlike *Chico*, the time to appeal from the original preliminary injunction had not elapsed when defendants filed their notice of appeal. (*Chico*, *supra*, 208 Cal.App.3d at p. 251.) *Chico* notes that courts have entertained appeals from modified preliminary injunctions raising issues pertaining to the original preliminary injunction where, among other things, the appeal would have been timely if it had been taken from the original preliminary injunction. (*Id.* at pp. 252-253, citing *People v. Associated Oil Co.*, *supra*,

10

212 Cal. at p. 77.)  This would appear to indicate that we may entertain defendants' arguments which pertain to the original preliminary injunction.  In neither *Chico* nor in *People v. Associated Oil Co.*, however, did the court address the question of jurisdiction to entertain an appeal from an order or judgment as to which an appeal would have been timely but which is not specified in the notice of appeal.  We find this to be dispositive.  "'"[W]here several judgments and/or orders occurring close in time are separately appealable (e.g., judgment and order awarding attorney fees), each appealable judgment and order must be expressly specified—in either a single notice of appeal or multiple notices of appeal—in order to be reviewable on appeal."'  [Citations.]"  (*Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 239; see also *Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 45-47 [rule of liberal construction of notice of appeal does not permit court to address issues pertaining to order or judgment not specified in the notice of appeal].)  Both the August 19, 2014 and the September 18, 2014 orders are appealable, but defendants' notice of appeal specifically states that the appeal is taken from the September 18, 2014 order and does not mention the earlier order.  Accordingly, we do not have jurisdiction to consider issues which could have been addressed in an appeal from the original preliminary injunction but were not.

For this reason, we agree with plaintiffs that neither the trial court's determinations that they are likely to prevail on the merits or as to the potential irreparable harm to plaintiffs and the balancing of hardships can be challenged in this appeal.  In their opposition to the motion for modification of the injunction,

11

defendants did not make any showing of new facts that would support the conclusion that the plaintiffs would not prevail on the merits, nor did they assert any new facts pertaining to the questions of irreparable harm or balancing of the hardships.[6] They argued that the order barring them from using any of the funds to operate the business militates against the injunction. The original injunction barred them from transferring or using the funds pending trial, however, so the modified injunction does not place any additional burden on defendants in that respect. In the absence of any new evidence of harm the defendants might suffer or of any greater restriction placed upon them by the modified injunction, defendants may not address this issue in the current appeal.

Finally, although defendants assert that the trial court abused its discretion in requiring plaintiffs to post a bond of only $10,000, at the hearing on the modification, defendants expressly agreed to that amount. Only a party aggrieved by a trial court ruling may assert error on appeal. A party who expressly agrees to an action taken by the trial court is not aggrieved and cannot challenge that action on appeal. (*Gober v. Ralphs Grocery Co*. (2006) 137 Cal.App.4th 204, 211; *Nevada County Office of Education v. Riles* (1983) 149 Cal.App.3d 767, 779.) Accordingly, defendants cannot challenge the amount of the undertaking.

---

**6** The one new argument defendants made in their opposition to the modification is that the injunction would prevent them from earning a living. That assertion was not supported by a declaration or any other evidence, however, and the evidence actually shows that defendants operated a jewelry business in addition to VVV. Because that assertion was not supported by any evidence, we disregard it.

*The Court Did Not Abuse Its Discretion in Granting the Modified Preliminary Injunction*

Defendants' remaining argument is that it was an abuse of discretion to issue a mandatory preliminary injunction. They contend that because the modified preliminary injunction was mandatory in nature, we must scrutinize it more carefully than if it were prohibitory. Plaintiffs respond that all injunctions are reviewed for abuse of discretion, and although mandatory preliminary injunctions are less favored than prohibitory preliminary injunctions, the same standards apply. We need not address this argument, however, because the parties are mistaken that the modified preliminary injunction is mandatory.

Whether an injunction is mandatory or prohibitory depends upon whether the overall effect of the injunction is to prohibit or compel action. (*United Railroads of San Francisco v. Superior Court* (1916) 172 Cal. 80, 82-87.) An injunction may be prohibitory even if it requires the restrained party to undertake some affirmative act that is necessary to effectuate the principal purpose of the injunction. (*Youngblood v. Wilcox* (1989) 207 Cal.App.3d 1368, 1372, fn. 1 [Fourth Dist., Div. Two]; *Jaynes v. Weickman* (1921) 51 Cal.App. 696, 700.) Here, the original preliminary injunction ordered defendants not to transfer or use any funds provided by plaintiffs and deposited into the corporate account, and to provide plaintiffs with access to the records of the account. Thus, the principal purpose of the injunction was to prohibit defendants from dissipating the funds plaintiffs provided for the business venture. This order was based on the representation that $500,000 which had been withdrawn from the account had been

redeposited. Upon learning that the funds not only had not been redeposited but that the account had been emptied and closed, the court modified the injunction to require defendants to deposit all of the funds that originated from plaintiffs and which remained under defendants' control into a new blocked account. The affirmative actions required by the modified injunction were merely ancillary acts necessary to effectuate the original injunction's objective of preserving plaintiffs' funds pending resolution of the underlying dispute. Accordingly, the modified preliminary injunction is prohibitory, not mandatory.

Moreover, there was no abuse of discretion. As we have discussed, the issues of plaintiffs' likelihood of success, irreparable harm to plaintiffs and the balancing of the hardships were addressed in the proceedings on the original preliminary injunction, and defendants made no factual showing in connection with the modification that would require a different result. Substantial evidence supports the trial court's findings that defendants had wrongfully removed funds from the corporate account and placed the funds in their personal accounts, and that they used some of the funds for personal rather than corporate purposes or for purposes not sanctioned by the EB-5 program. This evidence is sufficient to justify the modified injunction. Accordingly, there was no abuse of discretion. (*Moorpark*, *supra*, 63 Cal.App.4th at p. 1402.)

Defendants also contend that issuance of the injunction was an abuse of discretion because rather than preserving the status quo pending trial, the modified injunction alters the status quo. However, "status quo," for purposes of provisional injunctive relief, is defined to mean the "'"'last actual peaceable, uncontested status which preceded the pending controversy.'"' [Citations.]'" (*Moorpark*, *supra*, 63 Cal.App.4th at p. 1408.) In

14

this case, the status quo refers to the state of the corporate account before defendants began withdrawing funds for unauthorized purposes. Substantial evidence supports the trial court's finding that defendants had done so. Accordingly, the court did not abuse its discretion on this basis.

DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to plaintiffs.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:

RAMIREZ
P. J.

CODRINGTON
J.