Filed 12/17/25  Tani v. Lin CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| UTOMO TANI, | B338821 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 22STCV30356) |
| v. | |
| KAM CHOI LIN, et al., | |
| Defendants and Appellants. | |

APPEAL from order of the Superior Court of the County of Los Angeles, Stephanie M. Bowick, Judge.  Reversed.

West Themis Law, Sally S. Chan and Karen K. Tso for Defendants and Appellants.

Midway Law Firm and Joseph C. Crudo for Plaintiff and Respondent.

This is a dispute among the shareholders, management, and employees of Golden Partner Global Investment Inc., doing business as the NBC Seafood Restaurant (the Restaurant). The parties accuse one another of fraud and misappropriation of corporate funds. Plaintiff and respondent Utomo Tani, the Restaurant's president and a shareholder, filed this action seeking relief including the involuntary dissolution of the Restaurant pursuant to Corporations Code, section 1800.[1] The trial court granted Tani's motion for a preliminary injunction and appointment of a receiver. Defendants and appellants Kam Choi Lin (Lin), Chang Ho Chen (Chen), Wei Lin Zheng (Zheng), Wai Hung Szeto (Szeto), and Yan Xian Li (Li)—shareholders and/or employees of the Restaurant—appeal from this order.

We agree with appellants that the orders must be reversed. Tani failed to serve the Restaurant with the summons and complaint, and therefore, the orders as to the Restaurant are void. The trial court also abused its discretion in awarding injunctive relief and appointing a receiver. Substantial evidence did not support the court's finding that Tani owned 33 1/3 percent or more of the Restaurant's outstanding shares, a statutory prerequisite to his dissolution claim.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Restaurant

The Restaurant was formed in 2008. According to the articles of incorporation, Tani was the president and chief financial officer and Chen was the secretary. The Restaurant's directors were Tani, Chen, Lin, Zheng, Szeto, and another

---

[1] Undesignated statutory references in this opinion are to the Corporations Code.

2

individual, Kent Tran (Tran).  Shares in the Restaurant were issued as follows:

| Name | No. Shares | Consideration | Percentage |
|---|---|---|---|
| Lin | 37,500 | $375,000 | 41.6% |
| Tani | 20,000 | $200,000 | 22.2% |
| Tran | 17,500 | $175,000 | 19.4% |
| Chen | 5,000 | $50,000 | 5.55% |
| Zheng | 5,000 | $50,000 | 5.55% |
| Szeto | 5,000 | $50,000 | 5.55% |

Lin, the Restaurant's manager, and Li, its financial manager and bookkeeper, reported to Tani and provided him with quarterly financial reports.  The other shareholder defendants worked in the Restaurant's management and day-to-day operations.

**B.    The Complaint and Cross-Complaints[2]**

Tani's complaint asserted causes of action for breach of fiduciary duty, various fraud theories, conversion, constructive trust, unjust enrichment, inspection of records, and involuntary dissolution of the Restaurant pursuant to section 1800. Appellants, he alleged, made misrepresentations to outside accountants about the Restaurant's finances to usurp corporate opportunities and deprive the Restaurant of income.  He alleged that appellants violated his right to compensation by refusing to pay him bonuses.

---

[2]    The pleadings are not included in the appellate record. However, the trial court summarized relevant parts of the complaint and cross-complaints in the order that is the subject of this appeal.

3

In the complaint, Tani alleged that he was authorized to sue for involuntary dissolution of the Restaurant as "a shareholder who holds shares representing not less than Thirty-Three and one-third percent (33 1/3%) of the total number of outstanding shares." He alleged that grounds existed for involuntary dissolution of the Restaurant pursuant to section 1800, subdivision (b) in that "Defendants have engaged in persistent and pervasive fraud, mismanagement, and abuse of authority resulting in persistent unfairness toward" Tani. Further, the Restaurant's property was "being misapplied or wasted by Defendants" to his detriment. Tani named the Restaurant as a "Nominal Defendant" and did not serve it with the summons or complaint.

The shareholder defendants cross-complained against Tani, alleging claims for breach of fiduciary duty, accounting, declaratory relief, conversion, several fraud theories, unjust enrichment, inspection of records, and breach of oral contract. Li filed her own cross-complaint asserting claims for retaliation, discrimination, hostile work environment, and intentional infliction of emotional distress.

## C. Motion for Preliminary Injunction and Appointment of a Receiver

1. *Tani's Motion and Evidence*

Tani moved for a preliminary injunction "to maintain [the] *status quo*" of the Restaurant and to prohibit defendants from "collecting cash or distributing cash" from the business. He also moved for the appointment of a receiver.

Tani declared that he owned "41.67% of all issued and outstanding shares of ownership" in the Restaurant. He

4

explained that his initial ownership of 20,000 shares "equaled 22.2%" of the 90,000 issued shares, as indicated in the Restaurant's articles of incorporation. However, "[o]n or about January 1, 2021," he "reached an agreement" with Tran "to acquire his shares in the" Restaurant. He attested he "gave notice to all other shareholders and directors" of this agreement at a special meeting on January 1, 2021. He stated that notice of the special meeting was waived by the Restaurant's board of directors, and "[m]inutes of the Special Meeting confirm that it was approved by all [Restaurant] board members for a transfer of [Tran's] stock holdings in the [Restaurant] from himself to me."

Tani offered a single document to prove he received the shares from Tran, which we will refer to as the "January 2021 Minutes." Though titled "Minutes of Special Meeting of Stockholders of Golden Partner Global Investment Inc[.]," (some capitalization omitted) the document's opening paragraph recites that "[a] special meeting of the stockholders of SUMMER ROLLS INC was held" at the Restaurant on January 1, 2021. The minutes state Tani, the president, chaired the meeting, Chen acted as secretary, and Lin, Tran, Zheng, and Szeto were present. Tani suggested that the board authorize the "[t]ransfer [of] 19.4% of ownership" from "KENT TRAN to UTOMO TANI." The minutes indicate that the board approved the transfer and directed the president and secretary to transfer the shares.

The January 2021 Minutes refer to an appended document titled "Waiver of Notice of Special Meeting of Stockholders of Golden Partner Global Investment Inc[.]" (Some capitalization omitted.) This document states that the directors and stockholders "agree and consent that the special meeting of stockholders be held" at the Restaurant on January 1, 2021, for

5

the purpose of "Transfer of stock ownership." It bears the purported signatures of Tani and Tran, as directors, on August 24, 2021, and the purported signatures of Lin, Chen, Zheng, and Szeto, as directors, on various dates in October 2021.

Tani averred that, in April 2022, he formed a belief that appellants were "syphoning at least $250,000 in cash" from the Restaurant each quarter. John Luna, a certified public accountant, provided declarations in which he attested to reviewing several years of the Restaurant's tax returns, bank records, and internal cash records. He described discrepancies in the gross revenue reported in tax returns for the same year and between bank statements and tax returns.

Luna also described reviewing documents that indicated large cash transfers were made. On May 25, 2023, a new account at Universal Bank was opened with an initial deposit of $200,000 that had been transferred from the Restaurant's Cathay Bank account. Chen, Szeto, Lin, and Tran were among the new account's signers. The following month, two international wire transfers were made from the account, each around $35,000. Luna also described diminishing cash receipts and cash deposits between 2017 and 2022.

### 2. *Opposition of the Shareholder Defendants*

The shareholder defendants[3] opposed the motion on multiple grounds. Relevant to this appeal, they argued that the Restaurant had not been served with the summons and complaint, and therefore, the court lacked jurisdiction over it.

---

[3]     No opposition was filed on behalf of Li.

6

The shareholder defendants also argued that Tani failed to demonstrate a likelihood of succeeding on his dissolution claim because he did not satisfy section 1800's ownership requirement. They argued that the January 2021 Minutes of "Summer Rolls Inc." were not credible evidence of a transfer of Tran's shares to Tani. Tran furnished a declaration in which he described the minutes as a "forgery, fake, or falsely manipulated document . . . ." He denied attending a meeting on January 1, 2021, and denied agreeing to transfer his shares to Tani or anyone else.

3. *Trial Court's Order*

After a hearing, the trial court granted the motion. The court rejected appellants' jurisdiction arguments. It found that Tani showed a likelihood of prevailing on his dissolution claim, and specifically, that Tani had "demonstrated he owns not less than 33 1/3 percent" of the Restaurant's shares. The court further found uncontroverted evidence that Lin, Chen, and Szeto opened a bank account and transferred cash from the Restaurant into it, as well as evidence of other possible misappropriations of cash and misrepresentations concerning cash flow.

The trial court also found that "the balance of harm weighs substantially in favor of granting injunctive relief," as "[t]here has been a complete breakdown of the relationship between the directors and shareholders of the [Restaurant], internal dissention [sic] in the [Restaurant], mismanagement of the [Restaurant], allegations of fraud as well as abuse of authority, and the protection of the rights and interest of shareholders is in jeopardy."

The court's preliminary injunction provided: "1. The status quo of the business of [the Restaurant] must be maintained; [¶] 2. Any named defendant or any other person or entity controlled by a named defendant is prohibited from collecting or taking any cash derivative of restaurant operations of the [the Restaurant]; and [¶] 3. All defendants and any person or entity controlled by a named defendant is prohibited from taking any monetary compensation from income derivative of restaurant operations of [the Restaurant]."

The trial court appointed a receiver "to take over defined areas of the Restaurant" pursuant to section 1803. The court found that "absent the appointment of a receiver, the interests of the [Restaurant] and its shareholders will suffer pending the trial and determination of the complaint for involuntary dissolution." It found "substantial mistrust and intense animosity between the shareholders" in that both sides believe the other is harming the Restaurant's interests by misappropriating cash or committing fraud. "There is a clear dispute regarding cash and shareholder holdings, and accounting related to the Restaurant."

The receiver was ordered to access and control the Restaurant's bank and financial records; collect income and pay its costs, expenses, vendors, and employees; control cash transactions, payments, and deposits, and pay taxing authorities. Shortly thereafter, the trial court issued a separate order appointing Kevin Singer as receiver and directing him to take possession and control the Restaurant and all of its records; manage the business; "control all revenue, inventories and payable[s]" of the Restaurant; and "retain all decision making over" it.

Appellants appealed. Tani did not file a respondent's brief.[4]

## DISCUSSION

**A. Governing Law**

1. *Preliminary Injunctions*

"In determining whether to issue a preliminary injunction, the trial court considers two related factors: (1) the likelihood that the plaintiff will prevail on the merits of its case at trial, and (2) the interim harm that the plaintiff is likely to sustain if the injunction is denied as compared to the harm that the defendant is likely to suffer if the court grants a preliminary injunction." (*14859 Moorpark Homeowner's Assn. v. VRT Corp.* (1998) 63 Cal.App.4th 1396, 1402 (*14859 Moorpark*).) "'The latter factor involves consideration of such things as the inadequacy of other remedies, the degree of irreparable harm, and the necessity of preserving the status quo.' [Citation.]" (*Ibid.*)

"We reverse an order granting a preliminary injunction if the trial court has abused its discretion in ruling on one of the pertinent factors." (*14859 Moorpark, supra*, 63 Cal.App.4th at p. 1403.) "[W]e do not reweigh conflicting evidence or assess witness credibility, we defer to the trial court's factual findings if substantial evidence supports them, and we view the evidence in

---

[4] Tani did not file a respondent's brief by the deadline provided by California Rules of Court, rule 8.360(c)(2), and we issued a notice of default. Tani's attorney requested, and we granted, an extension of his time to file a respondent's brief. He did not, however, file a brief. Appellants filed a request pursuant to rule 8.220(a) that we deem his right to file a brief forfeited, and that the appeal be submitted for decision on the record and the opening brief. We deny this request as moot.

9

the light most favorable to the court's ruling." (*City of Corona v. AMG Outdoor Advertising, Inc.* (2016) 244 Cal.App.4th 291, 298–299.) "To the extent the plaintiff's likelihood of prevailing on the merits turns on legal rather than factual questions, however, our review is de novo." (*Id.* at p. 299.)

### 2. *Involuntary Dissolution of a Corporation (§ 1800)*

Section 1800 "gives the superior court jurisdiction over an action for the involuntary dissolution of a corporation." (*Gold v. Gold* (2003) 114 Cal.App.4th 791, 804 (*Gold*).) A verified "complaint for the involuntary dissolution of a corporation may be filed by . . . shareholders who hold shares representing not less than 33 1/3 percent of the equity of the corporation." (*Kline Hawkes California SBIC v. Superior Court* (2004) 117 Cal.App.4th 183, 188 (*Kline*); § 1800, subd. (a)(2).)

The statute sets forth six grounds for involuntary dissolution. Tani appears to have relied on subdivision (b)(4), of section 1800, which provides: "Those in control of the corporation have been guilty of or have knowingly countenanced persistent and pervasive fraud, mismanagement or abuse of authority or persistent unfairness toward any shareholders or its property is being misapplied or wasted by its directors or officers."

### 3. *Appointment of A Receiver (§ 1803)*

Upon the filing of a complaint for dissolution of a corporation, "[t]he powers granted to the superior court include the appointment of a receiver . . . ." (*Gold, supra*, 114 Cal.App.4th at p. 804.) A receiver may be appointed to take charge of the corporation's property and business if the court "has reasonable grounds to believe that unless a receiver of the

10

corporation is appointed the interests of the corporation and its shareholders will suffer pending the hearing and determination of the complaint . . . ." (§ 1803.)

"The appointment of a receiver is a drastic remedy, may involve unnecessary expense and hardship and courts carefully weigh the propriety of such appointment in exercising their discretion to appoint a receiver particularly if there is an alternative remedy." (*Hoover v. Galbraith* (1972) 7 Cal.3d 519, 528.) We review an order appointing a receiver for abuse of discretion. (*City of Crescent City v. Reddy* (2017) 9 Cal.App.5th 458, 466.) "An abuse of discretion is demonstrated if the court's decision was not supported by substantial evidence or the court applied an improper legal standard or otherwise based its determination on an error of law." (*Ibid.*) We review factual findings for substantial evidence. (*Ibid.*) We uphold the trial court's findings unless they so lack evidentiary support that they are unreasonable. (*Ibid.*)

## B. Contentions of Error

Appellants make numerous arguments on appeal. Among others, they argue that the trial court's orders were void because the Restaurant was not served with the summons and complaint. Further, they argue that Tani failed to demonstrate he owned 33 1/3 percent or more of the Restaurant's outstanding shares, a statutory prerequisite to his dissolution claim. Because these claims of error require reversal of the trial court's orders, we do not address their remaining arguments.

11

**C. The Orders Against the Restaurant Are Void Because the Restaurant Was Not Served With the Summons and Complaint**

Appellants argue that the preliminary injunction and receiver appointment orders were void against a party that was never served with a summons and complaint. Whether a judgment is void due to lack of service is a question of law that we review de novo. (*JHVS Group, LLC v. Slate* (2024) 107 Cal.App.5th 30, 36 (*JHVS*).)

When a shareholder seeks to dissolve a corporation, it seeks to end the corporation's legal existence. The corporation is named as a party so that it can defend itself. (See, e.g., *Stuparich v. Harbor Furniture Manufacturing, Inc.* (2000) 83 Cal.App.4th 1268, 1272–1273 [affirming summary judgment in favor of corporation named as defendant in involuntary dissolution action]; *Stumpf v. C.E. Stumpf & Sons, Inc.* (1975) 47 Cal.App.3d 230, 232 [corporation named as sole defendant in involuntary dissolution action appealed from judgment decreeing its dissolution]; see Friedman, Cal. Practice Guide: Corporations (The Rutter Group, July 2025 Update), ¶ 8:831 and Form 8:K [form involuntary dissolution complaint naming corporation as the sole defendant].) The corporation has a statutory right to avoid dissolution and appointment of a receiver by purchasing the plaintiffs' shares at their fair value. (See generally, § 2000; Friedman, Cal. Practice Guide: Corporations, *supra*, ¶ 8:861.) Initiating the buyout procedure supplants a cause of action for involuntary dissolution. (*Schrage v. Schrage* (2021) 69 Cal.App.5th 126, 137.)

Here, Tani named the Restaurant as a "nominal defendant," a designation used in shareholder derivative

litigation, not dissolution actions.[5]  Putting aside how he named
the Restaurant as a defendant, it is undisputed that Tani did not
serve the Restaurant with the summons or complaint.  Tani
admitted he never served the Restaurant with "any paperwork in
the case," and the register of actions reveals no proof of service of
the summons and complaint on the Restaurant.

Service of a party is necessary to obtain jurisdiction over it.
(*JHVS, supra*, at p. 36; Code Civ. Proc., § 410.50.)  In *JHVS*, the
borrowers and purchasers of land sued multiple defendants and
obtained a preliminary injunction to stop a pending foreclosure
sale.  (*JHVS, supra*, at p. 35.)  The enjoined parties included the
Slates, the mortgagees/sellers, but the uncontested record
demonstrated that they were never served with the summons
and complaint.  (*Id.* at p. 37.)  The *JHVS* court concluded that
there is "no factual basis upon which it can be said that JHVS
met the statutory requirements for obtaining personal
jurisdiction over the Slates," and "[t]he trial court's actions
against the Slates, including the preliminary injunction order,
are thus void on their face."  (*Ibid.*)

In this case, Tani obtained a preliminary injunction that
requires the "status quo of the business of [the Restaurant]" to be
"maintained."  He also procured the appointment of a receiver
who was ordered initially to take over the Restaurant's collection
of income, its spending, and its banking activity and later, its
entire operations.  Because Tani never served the Restaurant,

---

[5]     A derivative action is "filed on *behalf of the corporation* for
*injury to the corporation* for which it has failed or refused to sue."
(Friedman, Cal. Practice Guide:  Corporations, *supra,* ¶ 6:598.)  In such
cases, the corporation may be named as a nominal defendant.

13

the trial court had no jurisdiction over the Restaurant when it made these orders, and as to the Restaurant, the orders are void.

The trial court was incorrect to the extent it implied that it had jurisdiction over the Restaurant through the appearance of certain shareholders, officers, and directors. A corporation in its corporate rights and liabilities is as distinct from the persons composing it "'as an incorporated city is from an inhabitant of that city.' [Citations.]" (*Merco Construction Engineers, Inc. v. Municipal Court* (1978) 21 Cal.3d 724, 729–730.) "[A] corporation, unlike a natural person, cannot represent itself before courts of record in propria persona, nor can it represent itself through a corporate officer, director or other employee who is not an attorney. It must be represented by licensed counsel in proceedings before courts of record." (*CLD Construction, Inc. v. City of San Ramon* (2004) 120 Cal.App.4th 1141, 1145.) We find nothing in the record to indicate appellants entered a general appearance for the Restaurant.

## D. Substantial Evidence Did Not Support the Finding That Tani Satisfied Section 1800's Ownership Requirement

The trial court's injunction was premised upon its finding that Tani showed a likelihood of prevailing on his dissolution claim, and the order appointing a receiver presumed that Tani had asserted a viable claim for involuntary dissolution that would be determined at trial. An essential element of a cause of action for involuntary dissolution is that the plaintiff "hold shares representing not less than 33 1/3 percent of the equity of the corporation." (*Kline, supra,* 117 Cal.App.4th at p. 188; § 1800, subd. (a).) This requirement is "strictly construed."

14

(*Cardoza v. Millington* (1956) 142 Cal.App.2d 26, 34 [discussing section 1800's predecessor statutes, §§ 4650, et seq.].)

The trial court found sufficient evidence that Tani satisfied the percentage ownership requirement because his declaration showed he "'own[s] 41.67% of all issued and outstanding shares of ownership in the Company.'" Appellants, the court found, "do not make any objection to this evidence other than asserting, without a sufficient evidentiary basis, that the January 1, 2021, minutes for a special meeting of 'Summer Rolls Inc.' *whereby Plaintiff received a 19.4% transfer of ownership in 'Summer Rolls Inc.'* is 'falsified and forged.'" (Italics added.) Appellants "do not explain . . . why [Tani's] *ownership interest in an entity other than the [Restaurant]* is relevant [to] the question of whether Plaintiff may bring suit pursuant to Corporations Code section 1800, subdivision (a)(2) for purposes of dissolution of the [Restaurant]." (Italics added.) Appellants argue that, in so finding, the trial court rejected the very evidence Tani offered to prove his ownership percentage exceeded the statutory threshold. We agree.

Tani declared that it was "[t]he transfer of KENT TRAN's stock to [him that] increased [his] stock holdings in the [Restaurant] to 37,500 shares — a 41.67% interest in the total issued and outstanding shares in the [Restaurant]." He substantiated his conclusory statement with only the January 2021 Minutes. The trial court deemed the minutes irrelevant because they reflected a transfer of shares "in an entity other than the" Restaurant. Having made this determination, the trial court was left without a sufficient basis for finding that Tani owned more than his original 22.2 percent interest. (See *Jewish Defense Organization, Inc. v. Superior Court* (1999) 72

15

Cal.App.4th 1045, 1055 ["Declarations are insufficient to support the assertions for which they are offered if they consist primarily of vague assertions of ultimate facts rather than specific evidentiary facts permitting a court to form an independent conclusion on the issue"].)

We conclude that substantial evidence did not support the trial court's finding that Tani satisfied section 1800, subdivision (a)'s ownership requirement. Accordingly, the trial court abused its discretion in finding that he demonstrated a likelihood of success on the merits of his dissolution claim as necessary for the issuance of a preliminary injunction. Further, because Tani failed to establish his standing to assert a dissolution cause of action, the trial court abused its discretion in appointing a receiver. (See *Rondos v. Superior Court* (1957) 151 Cal.App.2d 190, 195 ["'Where a complaint fails by its allegations to show that the conditions required by law have been complied with[,] an order for the appointment of a receiver is void for all purposes'"].)

16

## DISPOSITION

The orders granting a preliminary injunction and appointing a receiver are reversed.  The cause is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.  Appellants are awarded their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MORI, J.

We concur:


ZUKIN, P. J.


COLLINS, J.

17